**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**


**JESSE HAMILTON ADAMS,**

      **Plaintiff,**

**vs.**                             **Case No. 4:08cv572-MP/WCS**

**DOCTOR DANIEL CHERRY,**

      **Defendant.**

_____/


## REPORT AND RECOMMENDATION

Defendant filed a second motion for summary judgment on April 16, 2010, doc. 38, and the *pro se* Plaintiff was advised of his obligation under Rule 56 to file a response to the motion, doc. 40. Plaintiff had already filed a response, doc. 39, at the time the order was entered, doc. 40. His latest response, doc. 46, is construed as a supplement to his first response.

Plaintiff brought this civil rights action alleging that Defendant Cherry violated his Eighth Amendment rights in the provision of medical care to Plaintiff by failing to provide Plaintiff with surgery for his hernia. Plaintiff was given leave to file a second amended complaint after Defendant filed a motion for summary judgment in October of 2009, doc.

21, which made that motion moot.  *See* doc. 36.  Defendant's renewed motion for

summary judgment was filed on April 16, 2010.  Doc. 38.  The motion is ready for a

ruling.

**Legal standards governing a motion for summary judgment**

On a motion for summary judgment Defendant initially has the burden to

demonstrate an absence of evidence to support the nonmoving party's case.  Celotex

Corporation v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2553-54, 91 L. Ed. 2d

265 (1986).  If accomplished, the burden shifts to Plaintiff to come forward with

evidentiary material demonstrating a genuine issue of material fact for trial.  *Id.*  An

issue of fact is "material" if it could affect the outcome of the case.  Hickson Corp. v.

Northern Crossarm Co., Inc., 357 F.3d 1256, 1259 (11th Cir. 2004) (citations omitted).

Plaintiff must show more than the existence of a "metaphysical doubt" regarding the

material facts, Matsushita Electric Industrial Co., LTD. v. Zenith Radio Corporation, 475

U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986), and a "scintilla" of

evidence is insufficient.  The Court must decide "whether the evidence presents a

sufficient disagreement to require submission to a jury or whether it is so one-sided that

one party must prevail as a matter of law."  Hickson Corp., 357 F.3d at 1260, *quoting*

Anderson v. Liberty Lobby, 477 U.S. 242, 252, 106 S. Ct. 2505, 2505, 91 L. Ed. 2d 202

(1986).  All reasonable inferences must be resolved in the light most favorable to the

nonmoving party, Watkins v. Ford Motor Co., 190 F.3d 1213, 1216 (11th Cir. 1999), if

there is a genuine dispute as to those facts.  Scott v. Harris, 550 U.S. 372, 380, 127

S.Ct. 1769, 167 L.Ed.2d 686 (2007), *cited in* Ricci v. DeStefano, 129 S.Ct. 2658, 2677

(2009).  "Where the record taken as a whole could not lead a rational trier of fact to find

for the nonmoving party, there is no genuine issue for trial." Matsushita Elec. Industrial

Co., 475 U.S. at 587 (internal quotation marks omitted), *quoted in* Ricci v. DeStefano,

129 S.Ct. at 2677.

"Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by

her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on

file,' designate 'specific facts showing that there is a genuine issue for trial.' " Owen v.

Wille, 117 F.3d 1235, 1236 (11th Cir. 1997), *cert. denied* 522 U.S. 1126 (1998), *quoting*

Celotex, 477 U.S. at 324, 106 S. Ct. at 2553 (quoting Fed. R. Civ. P. 56(c), (e)).  The

nonmoving party need not produce evidence in a form that would be admissible as Rule

56(e) permits opposition to a summary judgment motion by any of the kinds of

evidentiary materials listed in Rule 56(c).  Owen v. Wille, 117 F.3d at 1236; Celotex, 477

U.S. at 324, 106 S. Ct. at 2553.

**The relevant Rule 56(e) evidence**

At the time of the events in question, Plaintiff was incarcerated at Apalachee

Correctional Institution.  Doc. 46, p. 3; Ex. A (Plaintiff's affidavit).  On April 10, 2008,

Plaintiff reported to sick call, complaining that he had had a hernia for the past six

months and it was getting worse.  Doc. 38, p. 2; Ex. B.  Plaintiff was examined by Mr.

Daffin, the nurse, who noted on the observation summary:  "R inguinal bulge, reducible,

some discomfort at times."  *Id.*  Plaintiff was referred to the physician, and instructed to

return "on a call out" or if there was no improvement.  Doc. 38, Ex. B.

On May 23, 2008, Plaintiff returned to sick call complaining that his hernia was

"worse and doesn't go back in."  Doc. 38, p. 2; Ex. C.  The medical record also notes

that Plaintiff was currently taking Motrin and Goody's, and reported the hernia was

worse due to coughing and sneezing which had started approximately three weeks earlier. *Id.* Again, the notation from the examining nurse was that the hernia "was not out" at the present time, was not out when standing, and was still "reducible." *Id.,* at 3. Plaintiff was to continue the over-the-counter medication and Ibuprofen was also prescribed for him. *Id.*

Plaintiff reported to sick call again on June 23, 2008, complaining that his hernia was "big and hardly ever reduces." Doc. 38, p. 3; Ex. D. Plaintiff said he needed "to get it fixed," and advised it had been present for eight or nine months. *Id.* A notation on the record indicates that Plaintiff said his pain had increased from two to three months ago, and the record indicates the hernia had "gotten larger." Doc. 38, Ex. D. The assessment remained the same, however, that the hernia "was reducible at present" and Plaintiff was to continue with the previous medication orders and return if it did not reduce. *Id.* Plaintiff was told that he would be given a "callout" to see the Advanced Registered Nurse Practitioner (ARNP). *Id.*

On July 1, 2008, Plaintiff was called out to be evaluated by Kathryn Land, the ARNP at Apalachee Correctional Institution. Doc. 38, p. 3; Ex. E. Plaintiff reported "having more problems with his inguinal hernia." *Id.* Plaintiff said the supporter was "not helping." Doc. 38, Ex. E. Nurse Land examined Plaintiff and noted the hernia was "palpable" but "able to be reduced," and diagnosed Plaintiff with inguinal hernia. *Id.* She requested a referral, however, to a surgeon at the Regional Medical Center (RMC). Doc. 38, Ex. E. The consultation request form stated that Plaintiff was having increased pain but under physical findings, the request stated, "R inguinal hernia, reducible." Doc. 38, Ex. F. Defendant Cherry denied the consultation request on July 3, 2008. Doc. 38,

Exhibits E, F.  Defendant wrote on the request form: "Denied will monitor since it is currently reducible."  Doc. 38, Ex. F.  Defendant Cherry submitted an affidavit in which he avers he reviewed Plaintiff's "medical records and the history of medical treatment for his hernia."  Doc. 38, Ex. F2, p. 2.  Defendant Cherry denied the consultation request because the "hernia was currently reducible."  *Id.*

On July 30, 2008, Defendant Cherry instructed staff to schedule Plaintiff for a follow-up appointment.  *Id.*  Pursuant to Defendant Cherry's direction, a follow-up appointment was made for Plaintiff on the following Wednesday in the doctor's clinic.  *Id.; see also* doc. 38, ex. G.  Plaintiff was examined by Defendant Cherry on August 6, 2008, and noted that Plaintiff said that the hernia "goes down when he lays down."  Doc. 38, ex. F2, p. 2.  Defendant noted the hernia was obvious when standing, but "spontaneously reduces when he lies down."  *Id.*  Defendant concluded the hernia was reducible and issued Plaintiff a restricted activity pass.  *Id.*; *see also* doc. 38, ex. G.

On October 1, 2008, Plaintiff went to sick call for his hernia.  Doc. 38, pp. 4-5; Ex. H.  Plaintiff requested a "bottom floor pass" because he was having problems walking up and down stairs.  *Id.*  Plaintiff was issued a low bunk and low tier pass, and a pass for no heavy lifting over 20 pounds.  *Id.*

Plaintiff did not return to the clinic again for some four months, but was seen on February 2, 2009.  Doc. 38, p. 5; Ex. I.  Plaintiff was examined by Nurse Speigner at Apalachee Correctional Institution, who noted in the health care records that Plaintiff said the hernia was "down now" but "it really pops up sometimes."  *Id.*  The nurse noted once more that it was a "reducible R inguinal hernia."  *Id.*  Nurse Speigner directed him to return when it was not reducible.  *Id.*

Defendant submitted evidence of Plaintiff's grievances as well. Doc. 38; Exhibits

J-N. Plaintiff submitted an inmate request on August 8, 2008, which was denied on

October 13, 2008. Ex. J. Plaintiff's informal grievance to the assistant warden was

submitted on August 17, 2008, *see* Ex. K, and denied on September 4, 2008. Ex. L.

That denial was entered by Defendant Cherry, and in the response, Defendant Cherry

advised Plaintiff that he had been instructed to returned to the medical department if he

had increase in pain or the hernia became difficult to reduce. Doc. 38, ex. L. Plaintiff

had not been to the medical department. *Id.* Plaintiff's grievance appeal to the

Secretary's Office was filed on September 15, 2008, *see* Ex. M, and denied on October

8, 2008. Ex. N. In his appeal, Plaintiff noted he had last been to medical on August 6,

2008, but complained they just put him off. Doc. 38, ex. M.

Subsequent to Plaintiff's filing the complaint and initiating this case, he was

transferred to Mayo Correctional Institution in March, 2009. Doc. 38, p. 7; Ex. O.

Plaintiff reported to the medical department on November 3, 2009, asking for his lower

bunk pass to be renewed. Doc. 38, p. 7; Ex. P. Plaintiff also asked for hernia surgery

again, and the nurse advised Plaintiff she would refer the issue to the doctor. *Id.* On

November 16, 2009, Plaintiff's hernia was evaluated and the doctor noted "small rt

inguinal hernia, having palpations while standing." Doc. 38, p. 7; Ex. P. The doctor

found no bulging, no pain, and scheduled Plaintiff for a follow-up in January, 2010. *Id.*

Plaintiff's lower bunk pass was extended for another year. *Id.*

Plaintiff returned to the clinic for the follow-up appointment on January 29,2009.

Doc. 38, pp. 7-8; Ex. P. The doctor noted Plaintiff was not in acute discomfort, and the

hernia was not strangulated. *Id.* A surgical consult was ordered, and Dr. Hosseini

initiated a "routine Consultation Request for an evaluation and a recommended treatment plan." Doc. 38, p. 8; Ex. P. The doctor again noted, however, that the hernia was reducible and indicated only "mild discomfort." *Id.* The Consultation Request was denied by the physician advisor on February 3, 2010. *Id.*

An affidavit by Dr. Frank Johnson reveals, in summary, that Plaintiff was examined in the medical clink for complaints concerning the hernia on the following dates: April 10, 2008, May 23, 2008, June 23, 2008, July 1, 2008, July 30, 2008, August 6, 2008. Doc. 38, ex. B2. Dr. Johnson states that at each medical evaluation of plaintiff, the records indicate his "hernia remained reducible." *Id.*

Plaintiff has submitted his own affidavit as evidence in this case. Doc. 39, ex. A. Plaintiff acknowledges going to the medical department "numerous times seeking medical treatment for his hernia." *Id.*, at 3.[1] Plaintiff states in his affidavit his opinion that surgery is necessary to correct his condition "as the hernia continues to get bigger and Plaintiff is suffering extreme pain." *Id.* Plaintiff was in more pain during May, 2008, when he "had a cold and the coughing and sneezing was causing him extreme pain due to the hernia." Ex. A, p. 4; *see also* doc. 38, ex. C. Plaintiff also points out that he was again in "extreme pain" when he went to the medical department on June 23, 2008. Ex. A, p. 5. Plaintiff said that the hernia was "twice as large then when he was initially examined." *Id.* In his affidavit, he reports that Ms. Land, the nurse, told him he needed to "get the hernia fixed (meaning hernia surgery). *Id.*, at 5. Plaintiff also states that Defendant Cherry told Plaintiff he would "not put him in for surgery until [the hernia] was

---

[1] As a matter of clarification, this citation is to page 3 of Plaintiff's affidavit, Exhibit A, but the page correlates to page 5 on the electronic docket. Doc. 39-1, p. 5.

non-reducible." *Id.*, at 6. Plaintiff reports that because Defendant has not authorized

the surgery, he "has to hold his guts in anytime he stands." *Id.* Plaintiff avers that when

he told the Defendant he "was in extreme pain and having problems using the restroom"

the Defendant responded that he would "give Plaintiff more Ibuprofen." *Id.*, at 6. In

Plaintiff's supplemental response to summary judgment, doc. 46, he reiterates that other

medical personnel (Mr. Daffin and Mrs. Land) advised him that his hernia would "not

heal without surgery." Doc. 46, ex. A, p. 4. Plaintiff contends he is denied surgery

because it is too expensive. *Id.*

**Legal analysis**

Defendant asserts his Eleventh Amendment immunity in this case. Doc. 38, pp.

9-10. Furthermore, Defendant contends that Plaintiff's Eighth Amendment rights have

not been violated as Defendant was not deliberately indifferent to Plaintiff's medical

needs. *Id.*, at 10-12. Defendant contends this is a case where Plaintiff simply has a

difference of opinion as to the course of treatment for his condition. *Id.* Indeed, all

medical personnel who have examined Plaintiff's hernia have found it to be a reducible

and no medical staff ever deemed Plaintiff to be in need of surgery for the hernia. *Id.*, at

12-14. Defendant asserts that contrary to Plaintiff's allegation that he was

recommended for, and approved, to have hernia surgery by the chief health officer at

Mayo Correctional Institution, *see* doc. 32, pp. 7-8,[2] the evidence reveals that the

January 29th consultation request was denied on February 3, 2010. Doc. 38, p. 14; Ex.

P. Finally, Defendant asserts qualified immunity as a defense. Doc. 38, pp. 16-17.

---

[2] The actual page numbers used by Plaintiff are pages 7-8, but on the court's
electronic docket, these are pages 9-10 of the second amended complaint. Doc. 32.

Defendant does not concede that Plaintiff has a "serious" medical need, but suggests that even if it is deemed to be serious, Plaintiff cannot show that Defendant Cherry "knew of and disregarded an excessive risk to" Plaintiff's health. *Id.*, at 12. Plaintiff, on the other hand, points out that a "hernia can be a serious medical condition" and may "lead to life-threatening complications." Doc. 39, p. 16.

Deliberate indifference to the serious medical needs of sentenced prisoners violates the Eighth Amendment's prohibition of cruel and unusual punishment. Estelle v. Gamble, 429 U.S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976). A "'serious' medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Hill v. Dekalb Regional Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir. 1994), abrogated on other grounds by Hope v. Pelzer, 536 U.S. 730, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002), *quoting* Laaman v. Helgemoe, 437 F. Supp. 269, 311 (D. N.H. 1977). Alternatively, "a serious medical need is determined by whether a delay in treating the need worsens the condition" or "if left unattended, poses a substantial risk of serious harm." Mann v. Taser Intern., Inc., 588 F.3d 1291, 1307 (11th Cir. 2009), *citing* Hill, 40 F.3d at 1188-89, and Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003).

The concept of deliberate indifference entails something more than negligence, but is satisfied by something less than actions undertaken with an intent to cause harm. Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 1978, 128 L.Ed.2d 811 (1994). Deliberate indifference has been described as a culpable state of mind of the defendant to unnecessarily and wantonly inflict pain or harm to a prisoner by depriving him of a

basic human need.  Wilson v. Seiter, 501 U.S. 294, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991).  The Eleventh Circuit has clarified that there are four requirements to bringing an Eighth Amendment claim for the denial of medical care: "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need, and an actual inference of required action from those facts."  Taylor v. Adams, 221 F.3d 1254 (11th Cir. 2000), *cert. denied* 531 U.S. 1077 (2001); Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003).  Put another way, once a prisoner shows that he has a serious medical need, "the prisoner must prove three facts: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) by conduct that is more than mere negligence."  Brown v. Johnson, 387 F.3d 1344, 1351 (11th Cir. 2004), *citing* McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir.1999).

Medical malpractice does not constitute deliberate indifference.  Estelle, 429 U.S. at 106, 97 S. Ct. at 292.  "Nor does a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual punishment."  Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991), citing Waldrop v. Evans, 871 F.2d 1030, 1033 (11th Cir. 1989).  *See also* Johnson v. Stephan, 6 F.3d 691, 692 (10th Cir. 1993).  Yet not responding to complaints of pain is an Eighth Amendment violation and qualified immunity is unavailable.  McElligott v. Foley, 182 F.3d 1248 (11th Cir. 1999).  An "official acts with deliberate indifference when he or she knows that an inmate is in serious need of medical care, but he fails or refuses to obtain medical treatment for the inmate."  McElligott, 182 F.3d at 1255, *citing* Lancaster v. Monroe County, Ala., 116 F.3d 1419, 1425 (11th Cir. 1997); Mandel v. Doe, 888 F.2d 783, 788 (11th Cir.1989).

The court need not decide whether Plaintiff's reducible hernia constitutes an objectively serious medical condition. The dispositive inquiry is whether Plaintiff raised a genuine dispute of fact as to whether Defendant was deliberately indifferent to that condition.

It is undisputed that Plaintiff was examined numerous times and his hernia has been monitored by Defendant and other health care officials. While there is evidence from Plaintiff that his hernia is painful at times, Plaintiff was given several passes to ease the discomfort and to provide for his needs. He did not have to walk up and down stairs, he was given a low bunk pass, and was able to restrict his activities and was precluded from any heavy lifting over 20 pounds. Plaintiff was provided medication for pain, and there is no evidence that the medications were not sufficient to ease his pain. Plaintiff's condition was monitored and checked, and there is no evidence that any of the medical providers were indifferent to Plaintiff's situation, including the Defendant.

The fact that surgeries for hernias of this type are commonly performed in free society, as Plaintiff has argued, *see* doc. 39, pp. 17-19, does not mean that the failure of prison officials to provide surgery violates the Eighth Amendment. Plaintiff is not entitled to the best care available, that is, the kind of care that could be obtained if Plaintiff were not in prison or to elective procedures. The Eighth Amendment does not require that much. Plaintiff's condition here has been adequately treated, evaluated, and monitored. Failure to provide surgery for this hernia is not deliberate indifference to a serious medical need and summary judgment should be granted in favor of the Defendant.

In reaching this conclusion, I note that a survey of case law on this question does not find any published opinions in the Eleventh Circuit Court.  However, in the recent unpublished cases, there has never been a finding that an inmate's Eighth Amendment rights were violated when prison officials chose not to provide surgery for a reducible hernia, or delayed such surgery.  *See* <u>Palazon v. Secretary for Dept. of Corrections</u>, 361 Fed.Appx. 88, 89, 2010 WL 144021, 1 (11th Cir. Jan. 15, 2010) (finding the plaintiff was seen by doctors regularly and they did not want to operate as long as the hernia remained reducible); <u>Breach v. Prison Health Servs.</u>, 2009 WL 4827363, 14 (M.D. Ala., Dec. 10, 2009) (noting that an inmate's desire for a "different, less conservative mode of medical treatment does not amount to deliberate indifference" and delay in providing the surgery did not violate the Eighth Amendment); <u>Strickland v. Prison Health Services</u>, 2008 WL 808604, 4 (M.D. Ala., March 21, 2008) (concluding that plaintiff received conservative medical treatment for his hernia and his "desire for a different mode of medical treatment does not amount to deliberate indifference"); <u>Vargas v. Department of Corrections</u>, 2007 WL 2908572, 4 (N.D. Ga. Sept. 27, 2007) (same); <u>Camacho v. Corrections Corp. of America</u>, L 319277, 3-4 (S.D. Ga. Jan. 20, 2006) (concluding that the inmate's deliberate indifference claim lacked merit because he did not show that his hernia required surgical repair, or that any defendant "deliberately refused to provide necessary medical care."); <u>McCovery v. Sherman</u>, 2009 WL 2858001, 9 (S.D. Ala. Aug. 28, 2009) (failed to show denial of his Eighth Amendment right to medical care in delay of surgery to repair inguinal hernia while it was reducible).  These cases are consistent with my conclusion that the Eighth Amendment does not require surgery for a hernia

that is reducible and without complications, where other accommodations have been

provided.

**RECOMMENDATION**

In light of the foregoing, it is respectfully **RECOMMENDED** that Defendant's

motion for summary judgment, doc. 38, be **GRANTED** and judgment be entered in

Defendant's favor.

**IN CHAMBERS** at Tallahassee, Florida, on September 23, 2010.


      s/      William C. Sherrill, Jr.

**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**

**<u>NOTICE TO THE PARTIES</u>**

**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 14 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**